29 So.3d 511 (2009)
Deborah C. PERRILLOUX
v.
FIRST GUARANTY BANK and Stone Trust Commercial Insurance Company.
No. 2009 CA 0054.
Court of Appeal of Louisiana, First Circuit.
October 9, 2009.
*512 John P. Murrill, Baton Rouge, LA, for Appellant, First Guaranty Bank and Stone Trust Commercial Insurance Company.
*513 Robert A. Lenter, Metairie, LA, for Appellee, Deborah C. Perrilloux.
Before PARRO, DOWNING and GAIDRY, JJ.
DOWNING, J.
In this workers' compensation claim, the employer, First Guaranty Bank and its insurer, Stone Trust Commercial Insurance Co., (hereinafter "Stonetrust"), seek review of a judgment rendered in favor of the employee, Deborah C. Perrilloux. For the following reasons, we amend in part, and affirm as amended the Office of Workers' Compensation (WCJ) judgment.
The WCJ found that Ms. Perrilloux sustained a compensable work-related injury to her left knee on February 1, 2007. The WCJ found that she was entitled to temporary total disability (TTD) benefits at the maximum rate of $478.00 per week, retroactive to October 16, 2007, to continue until modification was warranted; it also ordered Stone Trust to pay for Ms. Perrilloux's left-knee revision surgery. The judgment assessed Stonetrust with $2,000.00 in penalties and $2,000.00 in attorney fees for its failure to timely institute TTD benefits. It was also penalized an additional $2,000.00 in penalties and $2,000.00 in attorney fees for failing to approve the left-knee revision surgery.
Stonetrust appealed, alleging that the WCJ erred in ruling that the knee surgery was related to Ms. Perrilloux's work injury and erred in awarding the maximum TTD benefits. Stonetrust also assigned error to the penalty and attorney fee awards.

BACKGROUND
On August 20, 1998, Ms. Perrilloux began working at First Guaranty Bank. On February 1, 2007, the chair on which she was seated in the bank patio collapsed, causing injury to her left knee. Ms. Perrilloux remained off work until Dr. Fambrough, an orthopedic surgeon, released her to return on March 13, 2007. She was paid full benefits during this time. Shortly thereafter, Ms. Perrilloux complained of pain in her right knee; she left work on April 14, 2007, and never returned to the job.
Years prior to the accident, Ms. Perrilloux had undergone knee replacement surgery on both knees. Dr. Fambrough had replaced the right knee in 1997 and the left knee in 2002. After Ms. Perrilloux was discharged from Dr. Fambrough, she did not visit him again until she sought treatment for her left knee after the accident. On February 5, 2007, while Dr. Fambrough was treating Ms. Perrilloux's injured left knee, he determined that her right knee needed revision surgery which was unrelated to the work-related accident. Shortly thereafter, Ms. Perrilloux began complaining of renewed pain in her left knee. Dr. Fambrough recommended she have a similar revision surgery on he left knee; his report did not mention if he thought the left knee problems were related to the work-accident.
Ms. Perrilloux requested a switch in treating physicians. Stonetrust approved her switch to Dr. Roch Hontas at the Tulane Medical Center. She saw Dr. Hontas on July 5, 2007. After the examination, Dr. Hontas concluded that it was reasonable to assume that the work-related accident triggered her current symptoms to the point that the left-knee revision procedure should be considered. On August 8, 2007, Dr. Hontas recommended that Ms. Perrilloux have revision surgery on her left knee.
Stonetrust requested an independent medical examination (IME) with Dr. Joseph Morgan, a Baton Rouge orthopedic surgeon. Dr. Morgan reported that Ms. Perrilloux's left knee problems appeared *514 to be "more of a wear and tear situation" than a result of the accident. Stonetrust denied surgery benefits; Ms. Perrilloux filed a claim. Stonetrust avers that it denied the claim based upon Dr. Morgan's adverse report and also because Ms. Perrilloux told Dr. Hontas that her left knee was "asymptomatic" prior to the accident. Stonetrust alleges that this false information from Ms. Perrilloux led Dr. Hontas to conclude that the revision surgery needed to repair the left knee was caused by the accident.

CAUSATION
In Stonetrust's first assignment of error it contends that Ms. Perrilloux failed to introduce sufficient evidence to connect her left-knee surgery to the February 2007 work-related accident. Stonetrust argues that the only medical evidence to connect this surgery to the accident was Dr. Hontas's report that it claims was "unquestionably insufficient" since it was based on Ms. Perrilloux's allegedly inaccurate chronicle. We disagree. A careful reading of Dr. Hontas's report indicates that Ms. Perrilloux told him that she experienced "fairly immediate left knee pain" at the time of the accident, but "was doing very well with her knees prior to this event." The report also states a substantiated fact that, up until the accident, Ms. Perrilloux had not returned to Dr. Fambrough because she was essentially pain free. Dr. Hontas did conclude that the thinning knee replacement components predated the work injury but the revision procedure would probably now be needed sooner rather than later.
Dr. Hontas's report stated that Ms. Perrilloux was "completely asymptomatic prior to the accident," but however, it did not say that this was the only factor he considered in concluding that her left-knee pain was caused by the accident. Moreover, Ms. Perrilloux clarified the "asymptomatic" assertion when she testified that both knees had given her pain since her first knee replacement in 1997. She also explained that prior to the accident, she was still mobile. She said that although it was painful, prior to the accident she was nimble enough to dance. This assertion is bolstered by the fact that she had not sought Dr. Fambrough's treatment since being released in 2002.
Further, Dr. Fambrough noted on February 5, 2007, that Ms. Perrilloux was having considerable pain in her left knee and that "she most likely has sustained a fairly severe contusion in this area." He noted on the follow-up visit that she was still having pain and still lacked about 10 degrees of full extension in the left knee. Moreover, the record indicates that knee replacements generally last about ten years before a revision is necessary. Ms. Perrilloux's left knee was totally replaced by Dr. Fambrough in 2002. It is therefore reasonable for the WCJ to conclude that the revision surgery is now needed "sooner rather than later," as noted by Dr. Hontas, because of the accident.
Here, the WCJ was informed of Ms. Perrilloux's inconsistent report to Dr. Hontas. Based on the medical evidence and the witness' credibility, the WCJ still concluded that Ms. Perrilloux suffered a work-related injury to her left knee and ordered Stonetrust to approve the revision procedure as recommended by Drs. Hontas and Fambrough. The trier of fact's finding regarding causation is a factual finding that is given great deference and is reviewed under the manifest error standard. Peters v. Harmsen, 03-1296, p. 7 (La.App. 1 Cir. 4/2/04), 879 So.2d 157, 161. To be entitled to benefits, the claimant must establish a causal link between the accident and the disabling condition. Meneses v. IFCO Systems, Inc., 04-1686, *515 p. 8 (La.App. 1 Cir. 9/23/05), 923 So.2d 111, 116. When an employee suffered from a pre-existing medical condition, he may still meet his burden of proving causation, if he can show that the accident aggravated, accelerated or compounded the condition to produce a compensable disability. Id. Although we may have reached a different result, we cannot conclude that the WCJ's determination regarding this issue was manifestly erroneous. Accordingly, this assignment of error is without merit.

TEMPORARY TOTAL DISABILITY BENEFIT
Stonetrust assigned error to the WCJ's award of $478.00 in weekly TTD benefits to Ms. Perrilloux when her stipulated wage was only $534.82.
An employee declared to be temporarily totally disabled is entitled to sixty-six and two-thirds percent of his/her wages during the period of disability. La. R.S. 23:1221(1)(a). Here, the parties agreed and stipulated that Ms. Perrilloux's weekly wages were $534.82 per week. The correct TTD benefit, then, would be $356.55. This assignment of error has merit, and we accordingly will amend the judgment to reflect the correct amount.

PENALTIES AND ATTORNEY FEES
Stonetrust contends that the attorney fee and penalty awards assessed against it were in error because it reasonably controverted Ms. Perrilloux's claims based on her being released from her doctor and having returned to work, her prior use of narcotic analgesics, and Dr. Morgan's opinion that her left knee surgery was unrelated to the work-related accident.
Louisiana Revised Statutes 23:1201(F) covers situations where the employer fails to commence payment of benefits or to pay medical benefits timely. Under this section, both penalties and attorney fees are recoverable unless the claim is reasonably controverted. A claim is reasonably controverted when the employer has sufficient factual and/or medical information to counter evidence presented by the claimant. Brown v. Texas-LA Cartage, Inc., 98-1063, p. 9 (La.12/1/98), 721 So.2d 885, 890.
The thrust of Stonetrust's argument is that it should not be penalized when its investigation indicated that, prior to the work-related accident, Ms. Perrilloux was taking large amounts of narcotic analgesic medication and had undergone total knee replacement on both knees. Stonetrust further contends that based on Dr. Morgan's opinion that her left knee surgery was unrelated to the accident, it was reasonable to controvert her claim for compensation for the time she missed work after having that surgery.
To escape the penalty and attorney fee provision of the statute, the employer must have sufficient factual or medical information to counter evidence presented by the claimant. Brown, 98-1063 at p. 9, 721 So.2d at 890. The employer or compensation insurer has a duty to investigate and make every reasonable effort to assemble and assess factual and medical information in order to ascertain whether the claim was compensable before denying benefits. Parfait v. Gulf Island Fabrication, Inc., 97-2104, p. 17 (La.App. 1 Cir. 1/6/99), 733 So.2d 11, 25. Stonetrust claims that it based its refusal to allow Ms. Perrilloux's surgery on Dr. Morgan's report that her left knee problems were caused by normal wear and tear, even though Dr. Hontas's report stated otherwise. An employer may not avoid penalties and attorney fees by blindly relying on an optimistic medical report in the face of information indicating the possibility *516 of continuing disability. Roussell v. St. Tammany Parish School Board, 04-2622, p. 19 (La.App. 1 Cir. 8/23/06), 943 So.2d 449, 463.
As discussed above, we find no error in the WCJ's holding that Ms. Perrilloux's present left knee injury arose from a work-related incident. We further conclude that the WCJ did not err in finding that Stonetrust did not reasonably controvert Ms. Perrilloux's claim because as discussed in Parfait and Roussell, the employer has an obligation to fully investigate conflicting reports before it denies the claimant relief.
The imposition of penalties and attorney fees for the refusal to pay workers' compensation benefits presents a factual question that will not be disturbed upon review absent manifest error. Billiot v. Wal-Mart Stores, Inc., 03-2451, p. 4 (La. App. 1 Cir. 10/29/04), 897 So.2d 64, 67. We conclude that the WCJ did not err in imposing the penalties authorized under La. R.S. 23:1201(F). The penalties imposed by the WCJ were within the statutory limits, and the attorney fees awarded were not an abuse of discretion. This assignment of error is without merit.

DECREE
After a thorough review of the record, we conclude that the WCJ did not err in finding that Ms. Perrilloux sustained a work-related injury to her left knee. Nor did it err in finding she was entitled to penalties and attorney fees for Stonetrust's failure to timely institute TTD benefits and its failure to approve her knee revision surgery. The WCJ did err, however, in calculating her rate of temporary total disability benefit, which is hereby reduced to $356.55 per week. The WCJ judgment is therefore amended to reflect that Deborah C. Perrilloux's correct temporary total disability calculation is $356.55 weekly. This memorandum disposition is rendered in accordance with Uniform RulesCourts of Appeal, Rule 2-16.1 B. First Guaranty Bank and its insurer, Stonetrust Commercial Insurance Co. are assessed with the costs of these proceedings.
AMENDED IN PART AND AFFIRMED AS AMENDED.
GAIDRY, J., concurs.
PARRO, J., concurs in part and dissents in part and assigns reasons.
PARRO, J., concurring in part and dissenting in part.
Because I believe that the claim for benefits related to her left knee revision surgery was reasonably controverted by the defendants, I would reverse the award of penalties and attorney fees.